# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

YOLONDA WARD,       *
     *
     Plaintiff,      *
     *
     v.      *      CV 215-077
     *
GLYNN COUNTY BOARD OF      *
COMMISSIONERS,      *
     *
     Defendant.      *

## ORDER

This matter comes before the Court on two fully-briefed Motions to Dismiss filed by Defendant Glynn County Board of Commissioners ("Defendant"). See Dkt. Nos. 11, 16, 18, 20. For the reasons set forth below, Defendant's first Motion to Dismiss (dkt. no. 11) is **GRANTED in part** and **DENIED in part** as follows: the Motion is **GRANTED** as to its request for a dismissal of Plaintiff's claims in counts three and four of the Amended Complaint; it is **DENIED** to the extent that it seeks a dismissal of all claims for insufficient service of process; and it is **DENIED** insofar as it requests a dismissal of Plaintiff's claims in counts one and two. Defendant's second Motion to Dismiss (dkt. no. 18) is **DISMISSED as moot.**

## FACTUAL BACKGROUND

Plaintiff Yolonda Ward ("Plaintiff") began working at the Glynn County Property Appraisal Office (the "Property Appraisal Office") in Glynn County, Georgia, in 2000. Dkt. No. 7 (Amended Complaint, hereinafter "Am. Compl."), ¶¶ 5-6, 11. While Plaintiff initially held the position of Cashier/Clerk, she moved to Certified Appraiser in 2004. See id. at ¶¶ 11-12; Dkt. No. 11, Ex. A. Plaintiff, who is African American, was one of few African American employees in the Property Appraisal Office. Am. Compl., ¶ 12.

Defendant is the local governing authority of Glynn County. Id. at ¶ 6. The Property Appraisal Office is a department within the Glynn County government and is responsible for appraising and revaluing property in the county. Id. at ¶¶ 6, 12.

## I.    Alleged Events in the Workplace

On April 2, 2009, three of Plaintiff's Caucasian coworkers—one of whom is named Carrie Smith ("Smith")—notified Plaintiff that they had "something" to give to her. Id. at ¶ 14. According to Plaintiff, her coworkers handed her "a porcelain white Santa Claus figurine with its face colored black." Id. at ¶ 15. Plaintiff alleges that her coworkers laughed as they left the figurine on her desk, much to her surprise and humiliation. Id. at ¶¶ 16-17.

AO 72A
(Rev. 8/82)

In early May 2009, the Chief Appraiser, Robert Gerhardt ("Gerhardt"), reassigned Smith and another Caucasian employee to assist the office's Data Analyst Supervisor. Id. at ¶ 18. Plaintiff and another African American employee subsequently met with Gerhardt to discuss their coworkers' reassignment. Id. at ¶ 19. The two inquired as to why their coworkers were reassigned to work with the Data Analyst Supervisor when Gerhardt knew that they were interested in and qualified for the positions. Id. Gerhardt did not provide any explanation for his decision. Id. at ¶ 20.

Plaintiff then met with the Director of Human Resources, Orah Reed ("Reed"), on May 15, 2009. Id. at ¶ 21. Plaintiff showed Reed the black-faced figurine and informed her of her conversation with Gerhardt. Id. Reed called Smith into her office, at which time Smith apologized for her conduct. Id. at ¶ 22. Reed then summoned Gerhardt, who replied that he would speak to Smith about the incident but, according to Plaintiff, never took any disciplinary action against Smith or otherwise apologized to Plaintiff at any time. Id. at ¶¶ 23-26.

Plaintiff filed a grievance against Smith and Gerhardt in June 2009, based on their allegedly racist behavior in these instances. Id. at ¶ 27. Plaintiff's grievance also complained that Gerhardt had called another African American employee by the nickname "Ms. Thang." Id. at ¶ 28. Plaintiff maintains

AO 72A
(Rev. 8/82)

that the nickname was "extremely inappropriate and offensive," as it is slang for "a haughty woman (especially a woman of color)." Id.

In October 2009, there was an opening for the Data Analyst Supervisor position, and Defendant offered the position to Smith. Id. at ¶ 29. When Smith rejected the promotion, Gerhardt extended the offer to Plaintiff, who accepted. Id. at ¶¶ 30-31. Plaintiff alleges that all of the previous data analyst supervisors had overseen and were supported by two data entry employees, but that Gerhardt, upon Plaintiff's acceptance of this position, reclassified the position as nonsupervisory and assigned the existing data entry employees to new jobs. Id. at ¶¶ 32-33. Plaintiff also was reassigned to another office known as "the closet." Id. at ¶ 35.

On three occasions that month, Plaintiff met with one or more of her superiors—including Gerhardt; Deputy Chief Cary Carter ("Carter"); and her direct supervisor, Andrea Reichenbach ("Reichenbach")—to discuss who would be assisting her with the data entry and what training she would receive for her new position. Id. at ¶¶ 36, 40, 43. Plaintiff asserts that her supervisors ignored her requests for assistance and never trained her for her new position. Id. at ¶¶ 37, 39, 42.[1]

---

[1] Plaintiff notes that Gerhardt allowed her to have one individual help her enter data once a week, but nevertheless maintains that she

AO 72A
(Rev. 8/82)

According to Plaintiff, she was required to perform all of the data entry herself while learning how to operate a new data system and finishing work from her previous position that remained outstanding. Id. at ¶¶ 38, 41. Plaintiff believes that Gerhardt and Reichenbach set her up to fail. Id. at ¶ 47.

Unable to fulfill her duties without assistance or training, Plaintiff states that she resigned from the Data Analyst position and returned to her former position on October 27, 2009. Id. at ¶¶ 48-49; Dkt. No. 11, Ex. A.[2] In December of that year, one of Plaintiff's Caucasian coworkers, Jamie Comer ("Comer"), was promoted to Data Analyst, and Gerhardt restored the two data entry assistant positions, and created another assistant position, to support Comer in this role. Am. Compl., ¶¶ 50-52. In addition to Comer's three-person support staff, Reichenbach sent an E-mail in February 2010 notifying the appraisers that they could "all help with data entry," and Gerhardt subsequently announced that even more personnel would be working in data entry in the following year. Id. at ¶ 53, 60.

---

"needed the assistance of at least two full-time employees, like her Caucasian predecessors had received." Am. Compl., ¶¶ 44-45.

[2] The Amended Complaint alleges that Plaintiff stepped down from the Data Analyst position on October 28, 2009, am. compl., ¶¶ 48-49, while her administrative charge indicates that this event occurred the day before, on October 27, 2009, dkt. no. 11, ex. A. For the purposes of ruling on the instant Motions, the Court will rely on the date set forth in the administrative filing.

AO 72A
(Rev. 8/82)

In February 2010, Carter gave Plaintiff and another African American employee their performance evaluations. Id. at ¶ 54. Plaintiff found this unusual, as their immediate supervisor, Reichenbach, had completed their reviews in the past and was doing so for Caucasian employees around this time. Id. at ¶¶ 54-55, 57. According to Plaintiff, Reichenbach refused to complete their evaluations, and, therefore, Plaintiff and her African American coworker reported this to Human Resources on March 5, 2010, as an incident of discrimination. Id. at ¶¶ 55-56.

Plaintiff alleges that she suffered "extreme stress" as a result of seeing her successor to the Data Analyst position, Comer, receive the exact type of assistance that had been withheld from her during her tenure. Id. at ¶ 58. She began to "experience her heart racing and episodes of crying." Id. at ¶ 59. Plaintiff sought medical care to cope with the stress of her work environment. Id.

## II. Plaintiff's Administrative Charge

On April 9, 2010, Plaintiff filed a charge of discrimination against her employer with the Equal Employment Opportunity Commission (the "EEOC"). Id. at ¶ 7; Dkt. No. 11, Ex. A. On the EEOC standard charge form—which requires a complainant to identify the type or types of discrimination alleged, such as race discrimination or retaliation—Plaintiff

6

marked only the box labeled "race." Dkt. No. 11, Ex. A.

Plaintiff indicated that the alleged discrimination took place

on October 27, 2009, and she left blank the box in which to

designate the discrimination as a "continuing action." Id.

Plaintiff described the allegedly discriminatory acts of

her employer in the administrative charge as follows:

> I.  . . . . On October 27, 2009, I stepped down
> from my [Data Analyst] position after the persons
> who were assigned to help the previous Caucasian
> [employee] in the position were reassigned to
> other positions in the office[,] leaving me to
> have to do all the work and also all the duties
> of my previous job. I was also required to give
> up my office location, which is assigned
> according to seniority[,] to another person who
> had less seniority than [me]. After I stepped
> down from my position[,] the Caucasian who was
> given the position was also given help for the
> position.
>
> II.  Chief Appraiser, . . . Gerhardt, told me the
> people were needed to be put into the field to
> collect data. No reason was given as to why I
> had to give up my office.
>
> III. I believe I have been discriminated against
> because of my race, African American, in
> violation of Title VII of the Civil Rights Act of
> 1964, as amended.

Id.

Plaintiff alleges that on February 19, 2014, "the EEOC's

Atlanta District Office issued a determination finding probable

cause that Defendant discriminated against [her] because of her

race . . . and retaliated against her for opposing its unlawful

employment practices." Am. Compl., ¶ 8. The EEOC referred the

matter to the Department of Justice (the "DOJ"). Id. at ¶ 9.
In a letter dated March 27, 2015, the DOJ notified Plaintiff of
her right to file suit on her claims within ninety days. Id. at
¶ 10.[3]

## PROCEDURAL BACKGROUND

Plaintiff filed a Complaint against Defendant in this Court
on June 25, 2015. Dkt. No. 1. Plaintiff also submitted a
Summons for the Clerk of Court's signature that was directed to
the Glynn County Attorney at his business address. Dkt. No. 4.
Before serving Defendant with the Complaint and Summons,
however, Plaintiff filed an Amended Complaint on October 14,
2015, which sets forth the same factual allegations and causes
of action as the original Complaint but with greater clarity.
See Dkt. No. 7. The Clerk of Court executed another Summons,
though this time directed to Defendant "care of" the Glynn
County Attorney at his business address. Dkt. No. 9.

## I.  Plaintiff's Causes of Action

In count one of the Amended Complaint, Plaintiff claims
race discrimination in violation of Title VII of the Civil
Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title
VII"). Am. Compl., ¶¶ 62-70. In particular, Plaintiff alleges
that Defendant denied her the same promotional opportunities

---

[3]  Plaintiff has not filed copies of the correspondence relating to the
EEOC or DOJ investigations but asserts that she can do so at the
Court's request. Dkt. No. 16, p. 15 n.2.

AO 72A
(Rev. 8/82)

available to Caucasian employees. Id. at ¶¶ 62-64. Plaintiff also contends that Defendant created a hostile work environment by failing to take corrective action after learning that employees were harassing and discriminating against Plaintiff, and that Plaintiff was unable to perform her job duties as a result. Id. at ¶¶ 64-69.

Plaintiff's count two alleges that Defendant retaliated against her in violation of Title VII. Id. at ¶¶ 71-76. According to the Amended Complaint, Plaintiff engaged in protected activity when she reported racial harassment, such as when she informed Human Resources about the incident involving the black-faced Santa Claus figurine. Id. at ¶ 73. Plaintiff avers that Defendant then subjected her to adverse employment actions in "removing the tools and assistance required to do her job" in the Data Analyst position and thus forcing her to resign from the position. Id. at ¶ 74.

Counts three and four set forth causes of action pursuant to 42 U.S.C. § 1981 ("Section 1981") based on the same allegations of race discrimination and retaliation, respectively, in counts one and two. Id. at ¶¶ 77-84. In each count of the Amended Complaint, Plaintiff states that Defendant's conduct has caused her to suffer "loss of pay and benefits, . . . diminished future earning capacity, emotional pain and suffering, inconvenience, mental anguish, loss of

AO 72A
(Rev. 8/82)

enjoyment of life, and other pecuniary and nonpecuniary losses."
Id. at ¶¶ 70, 76, 80, 84. Plaintiff seeks an award of lost
wages, compensatory damages of not less than $100,000, and
attorney's fees and litigation costs. Id. at ¶¶ c-e.

## II. Plaintiff's Attempts to Serve Defendant and Defendant's Motions in Response

Plaintiff never attempted to serve Defendant with notice of
this action prior to filing the Amended Complaint. See Dkt. No.
11-1, p. 5; Dkt. No. 16, p. 2. After filing the Amended
Complaint, Plaintiff served a copy of the same and the related
Summons on the Glynn County Attorney on October 21, 2015. Dkt.
No. 10. On November 12, 2015, Defendant filed the instant
Motion to Dismiss the Amended Complaint, dkt. no. 11, as well as
an Answer, dkt. no. 12.[4] Defendant's Motion and Answer raise
defenses based on Plaintiff's service of process on the Glynn
County Attorney, the legal sufficiency of her claims to relief,
her exhaustion of administrative remedies, and her compliance
with the statute of limitations. Dkt. No. 11-1, pp. 5-13; Dkt.
No. 12, p. 3.

On November 18, 2015, Plaintiff served copies of the
Complaint, Amended Complaint, and the later-issued Summons on
the Glynn County Administrator, as well as Defendant's Chairman.

---

[4] The docket of this case reflects that Defendant submitted the Motion to Dismiss at 4:28 PM, dkt. no. 11, and the Answer at 4:30 PM, dkt. no. 12.

AO 72A
(Rev. 8/82)

Dkt. Nos. 13-15.[5] Defendant then filed the now-pending Motion to Dismiss the Complaint and, in doing so, consolidated its briefing in support of the Motion with that intended as a Reply to the Motion to Dismiss the Amended Complaint. Dkt. No. 18. These Motions are now ripe for review.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a) requires that a plaintiff's complaint contain both "a short and plain statement of the grounds for the court's jurisdiction" and "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1)-(2). The complaint must be properly served along with a summons upon the defendant. Fed. R. Civ. P. 4(c). As such, a defendant may respond to the complaint by moving for its dismissal pursuant to Federal Rule of Civil Procedure 12(b) ("Rule 12(b)") for insufficient process, insufficient service of process, or failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(4)-(6).

## I. Service of Process

When a defendant challenges service of process, the plaintiff bears the burden of establishing its validity.

---

[5] While Plaintiff filed Affidavits stating that she had served the Glynn County Manager and Defendant's Chairman, see dkt. nos. 13-15, Defendant's briefing on the instant Motions reveals that the individual whom Plaintiff identifies as the Glynn County Manager is, in fact, the Glynn County Administrator, see dkt. no. 18, p. 6.

*Familia De Boom v. Arosa Mercantil, S.A.*, 629 F.2d 1134, 1139 (5th Cir. 1980) (citing 5 Wright & Miller, *Federal Practice and Procedure* § 1353 (1969)).[6] In determining whether the plaintiff meets her burden, a court must apply the standards of proof applicable to motions to dismiss for lack of personal jurisdiction. *Kammona v. Onteco Corp.*, 587 F. App'x 575, 578 (11th Cir. 2014) (citing *Lowdon PTY Ltd. v. Westminster Ceramics, LLC*, 534 F. Supp. 2d 1354, 1360 (N.D. Ga. 2008), and *Baragona v. Kuwait Gulf Link Transp. Co.*, 594 F.3d 852, 855 (11th Cir. 2010)). When a district court does not conduct an evidentiary hearing, the plaintiff need only allege sufficient facts in the complaint to establish a prima facie case of personal jurisdiction over a nonresident defendant. *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990) (citing *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988), and *Delong Equip. Co. v. Wash. Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988)).

However, if the defendant challenges personal jurisdiction with affidavit evidence in support of his position, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Diamond Crystal Brands, Inc. v. Food*

---

[6] In *Bonner v. City of Prichard*, the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981. 661 F.2d 1206, 1207 (11th Cir. 1981).

AO 72A
(Rev. 8/82)

Movers Int'l, Inc., 593 F.3d 1249, 1257 (11th Cir. 2010)

(quoting United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th

Cir. 2009)). The plaintiff must "substantiate the

jurisdictional allegations in the complaint by affidavits or

other competent proof, and not merely reiterate the factual

allegations in the complaint." Polski Linie Oceaniczne v.

Seasafe Transp. A/S, 795 F.2d 968, 972 (11th Cir. 1986) (quoting

Bloom v. A.H. Pond Co., 519 F. Supp. 1162, 1168 (S.D. Fla.

1981)).

The court, in turn, must accept the facts in the

plaintiff's complaint as true, to the extent that they remain

uncontroverted by the defendant's affidavits. Cable/Home

Commc'n Corp., 902 F.2d at 855. In addition, "[w]here the

plaintiff's complaint and supporting evidence conflict with the

defendant's affidavits, the court must construe all reasonable

inferences in favor of the plaintiff." Diamond Crystal Brands,

Inc., 593 F.3d at 1257 (quoting Meier ex rel. Meier v. Sun Int'l

Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002)).

## II. Statement of a Claim to Relief

A motion to dismiss for failure to state a claim challenges

the legal sufficiency of the complaint. See Fed. R. Civ. P.

12(b)(6). While the complaint need not contain detailed factual

allegations, it nevertheless "must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is

13

plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678

(2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

(2007)) (interpreting Fed. R. Civ. P. 8(a)(2)). Facial

plausibility requires that the complaint set forth enough facts

to "allow[] the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." Id. Thus, the

plaintiff must plead more than mere labels and conclusions, and

a formulaic recitation of the elements of a particular cause of

action does not suffice. Twombly, 550 U.S. at 555. At a

minimum, the complaint should "contain either direct or

inferential allegations respecting all the material elements

necessary to sustain a recovery under some viable legal theory."

Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276,

1282-83 (11th Cir. 2007) (per curiam) (quoting Roe v. Aware

Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir.

2001)).

    In evaluating whether the complaint satisfies this

standard, the court must "accept as true the facts as set forth

in the complaint and draw all reasonable inferences in the

plaintiff's favor." Randall v. Scott, 610 F.3d 701, 705 (11th

Cir. 2010). Ordinarily, the court's review on a motion to

dismiss is typically limited to the factual allegations

appearing on the face of the complaint, see Iqbal, 556 U.S. at

678, such that the presentation of matters outside of the

AO 72A
(Rev. 8/82)

pleadings converts the motion into one for summary judgment, Fed. R. Civ. P. 12(d). Even so, there are certain instances in which a court may consider matters outside of the pleadings without transforming the motion to dismiss into one for summary judgment, see Davis v. Self, 547 F. App'x 927, 929 (11th Cir. 2013), including, for example, documents that are incorporated into the complaint by reference, see Fed. R. Evid. 201(a)-(d); Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

## DISCUSSION

Defendant now moves to dismiss Plaintiff's Amended Complaint under Rule 12(b). Dkt. No. 11-1. Defendant contends that Plaintiff improperly amended the original Complaint, did not timely serve Defendant with the Amended Complaint, and fails to state any claim for relief in the Amended Complaint. Id. at pp. 5-13. Plaintiff responds that Defendant's Motion is moot, because Defendant simultaneously filed the Motion along with its Answer to the Amended Complaint. Dkt. No. 16, pp. 7-8. Nevertheless, Plaintiff goes on to argue that the Motion should be denied, because she properly filed the Amended Complaint and had adequate justification for its untimely service. Id. at pp. 8-12. Plaintiff further insists upon the legal sufficiency of her Title VII claims, though she concedes that her Section 1981

AO 72A
(Rev. 8/82)

claims are time barred and subject to dismissal. Id. at pp. 2, 12-17.

Defendant also moves to dismiss the original Complaint, apparently as a precautionary measure in the event that the Court finds this to be the operative pleading. See Dkt. No. 18, pp. 1-2. Defendant has consolidated its briefing in support of this Motion with that offered as a Reply to its first Motion to Dismiss. Id. As such, Defendant's briefing responds to Plaintiff's contention that its first Motion is moot, and makes largely the same arguments for dismissal of both complaints that were advanced with regard to only the Amended Complaint in that Motion. See id. at pp. 6-13, 15-16. However, the briefing goes slightly further than the first Motion, in that it seeks dismissal based on the allegedly defective nature of the Summons served on Defendant on November 18, 2015, as well as Plaintiff's alleged failure to plead facts sufficient to support the elements of a Title VII retaliation claim. Id. at pp. 13-14, 16-18.

I.   **Timing of Defendant's Motion**

Rule 12(b) provides that "[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required." Fed. R. Civ. P. 12(b). However, a party raising by motion the defenses enumerated under the rule—including insufficient process, insufficient service of

AO 72A
(Rev. 8/82)

process, and failure to state a claim—must do so "<u>before</u> pleading if a responsive pleading is allowed." <u>Id.</u> (emphasis added). While the party may challenge the legal sufficiency of the claims to relief in a later pleading, the defenses of insufficient process and insufficient service of process are waived if not properly raised in a pre-answer motion or in the first responsive pleading. <u>See</u> Fed. R. Civ. P. 12(b), (h)(1)-(2).

Defendant's filing of the Motion to Dismiss Plaintiff's Amended Complaint appears to comport with Rule 12(b). Defendant filed the Motion before its first responsive pleading, as the docket of this case shows that Defendant submitted the Motion at 4:28 PM, dkt. no. 11, and subsequently filed an Answer at 4:30 PM, dkt. no. 12, on November 12, 2015. Defendant's Motion seeks dismissal under Rule 12(b) for insufficient service of process and failure to state a claim, dkt. no. 11-1, pp. 5-13, and its Answer similarly raises these defenses, dkt. no. 12, p. 3. Accordingly, Defendant did not waive these defenses under the plain language of the rule. <u>See</u> <u>Lau v. Klinger</u>, 46 F. Supp. 2d 1377, 1382-83 (S.D. Ga. 1999) (no waiver where the defendants moved to dismiss the complaint for insufficient service of process and continued to assert this defense in their later-filed answers).

AO 72A
(Rev. 8/82)

Nevertheless, the Court recognizes that district courts in the Eleventh Circuit take different approaches where a defendant files a motion to dismiss for failure to state a claim contemporaneously with, or around the same time as, its filing of an answer to the pleading:

> Some courts deny the motion as moot or waived. See, e.g., Breckenridge Pharm., Inc. v. Metabolite Labs., Inc., No. 04-80090, 2007 WL 201261, at *4 n.4 (S.D. Fla. Jan. 24, 2007). These courts reason that, because a motion to dismiss challenges the sufficiency of the allegations within the complaint, an answer that admits or denies those allegations (and raises any available affirmative defenses) waives any objection a party may have under Federal Rule of Civil Procedure 12(b)(6) to move to dismiss for failure to state a claim. See id. Some courts will consider a motion to dismiss even if a defendant had previously answered the complaint. See, e.g., Blitz Telecom Consulting, LLC v. Mingo, No. 6:11-cv-12-Orl-31 KRS (M.D. Fla. Mar. 21, 2011), ECF No. 21. Still[,] other courts, in the interest of judicial efficiency, construe such motions as if they were motions for judgment on the pleadings. See Thornton v. City of St. Petersburg, Fla., No. 8:11-cv-2765, 2012 WL 2087434, at *2 (M.D. Fla. Jun[e] 8, 2012) (citing Brisk v. City of Miami Beach, Fla., 709 F. Supp. 1146, 1147-48 (S.D. Fla. 1989)).

ParkerVision, Inc. v. Qualcomm Inc., No. 3:11-CV-719-J-37TEM, 2012 WL 3637154, at *1 (M.D. Fla. Aug. 23, 2012) (footnote omitted).

The Court declines to find that Defendant's filing of an Answer on the same day as its Motion to Dismiss for failure to state a claim rendered its Motion moot. This case is unlike the majority of those in which courts in this circuit have denied

such motions on mootness grounds, in that Defendant's Motion—though filed on the same day as the Answer—did, in fact, comply with the procedural requirement that it be submitted before the responsive pleading.  Cf. Walker v. Mead, No. 6:13-CV-1894-ORL-36, 2014 WL 2778162, at *1 (M.D. Fla. June 18, 2014) (motion to dismiss was moot because it was filed simultaneously, in a single document, with the answer); Alilin v. St. Farm Mut. Auto. Ins. Co., No. 6:14-CV-1183-ORL, 2014 WL 7734262, at *3 (M.D. Fla. Jan. 30, 2014) (motion to dismiss was not timely where it was filed on the same day as and docketed after the answer); Brisk, 709 F. Supp. at 1147 (motion to dismiss was moot because it was filed five days after service of an answer).[7]

Although Plaintiff cites one case in which the defendants' motions to dismiss were denied as moot despite technically being filed before their answers, see dkt. no. 16, pp. 7-8 (citing Keh v. Americus-Sumter Cty. Hosp. Auth., No. 1:03-CV-68-2(WLS), 2006 WL 871109, at *1-2 (M.D. Ga. Mar. 31, 2006)), the reasoning in that case does not apply here.  In Keh, the court noted that "the contradictory natures of motions to dismiss and answers" made it "impossible as a procedural matter . . . to rule on the

---

[7]  While the court's discussion in Alilin does not detail the exact order in which the defendant filed its motion to dismiss and answer, see 2014 WL 7734262, at *3, the docket of that case indicates that the motion to dismiss was filed and docketed after the answer, Motion to Dismiss Counts II and III, Alilin (No. 6:14-CV-1183-ORL), 2014 WL 7734262, ECF No. 7.

AO 72A
(Rev. 8/82)

motions to dismiss," because "it is technically impossible to challenge[] the sufficiency of an allegation in a complaint, as one does in a motion to dismiss, while simultaneously admitting or denying the same allegation, as one does in an answer." 2006 WL 871109, at *2 (citing Brisk, 709 F. Supp. at 1147). Here, Defendant's asserted grounds for dismissal for failure to state a claim include Plaintiff's alleged failure to exhaust her administrative remedies and noncompliance with the statute of limitations, dkt. no. 11-1, pp. 8-13, and Defendant echoed these defenses in its Answer, dkt. no. 12, p. 3. As a result, there is no inherent inconsistency between Defendant's positions in its Motion to Dismiss and Answer that would prevent the Court from evaluating the merits of its Motion at this time.

Nor does it appear that equity or judicial efficiency supports treating the Motion to Dismiss as one for judgment on the pleadings. See ParkerVision, Inc., 2012 WL 3637154, at *2 (finding that it would be "harsh and inequitable" to the plaintiff to convert the motion to dismiss filed just before the answer into a motion for judgment on the pleadings). To the contrary, "[a] plaintiff is not prejudiced by the filing of [dismissal] motions simultaneously with an answer, . . . [as] that very filing puts the plaintiff on notice that the defendant is not waiving its right to assert the motions." Beary v. W. Publ'g Co., 763 F.2d 66, 68 (2d Cir. 1985) (defendant did not

waive its right to assert a motion to dismiss by filing the motion simultaneously with the answer). Thus, nothing in Rule 12(b) or the pertinent case law counsels against considering the merits of Defendant's Motion to Dismiss the Amended Complaint.

## II. Propriety of Plaintiff's Amendment of the Complaint

Pursuant to Federal Rule of Civil Procedure 15(a) ("Rule 15(a)"), a plaintiff may amend her complaint "as a matter of course" within either (a) twenty-one days after serving it or (b) twenty-one days after receiving service of a responsive pleading or motion, if one is required. Fed. R. Civ. P. 15(a)(1). In other words, a plaintiff may amend her pleading as a matter of right "so long as [the] amendment is filed 'within,' or 'not beyond,' 21 days of service of a pleading, service of a responsive pleading if required, or the filing of a motion under [Federal Rules of Civil Procedure] 12(b)(e) or (f)." Stephens v. Atlanta Indep. Sch. Sys., No. 1:13-CV-978-WSD, 2013 WL 6148099, at *2 (N.D. Ga. Nov. 22, 2013) (noting that "within" means "not beyond a particular area, limit, or period of time" (quoting Cambridge Dictionary)). A plaintiff seeking to amend at any time outside of these three windows may do so only with the court's leave or with the opposing party's written consent. See Fed. R. Civ. P. 15(a)(2).

In the case at bar, Plaintiff's attempt to amend the original Complaint was not in accordance with Rule 15(a). When

AO 72A
(Rev. 8/82)

Plaintiff filed the Amended Complaint on October 14, 2015, <u>see</u> dkt. no. 7, she had not yet served Defendant with the original Complaint. Consequently, none of the three circumstances for amending as a matter of course were present at that time: it was not within twenty-one days of serving the original Complaint, nor had Defendant filed any answer or motion in the case. Plaintiff thus needed to obtain the consent of the Court or Defendant prior to the amendment, and it is undisputed that Plaintiff did not do so.

Nevertheless, the Court finds that it would serve the purposes of Rule 15(a) to allow Plaintiff's amendment to stand despite its procedural deficiency when filed. Rule 15(a) instructs courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "The thrust of Rule 15(a) is to allow parties to have their claims heard on the merits, and accordingly, district courts should liberally grant leave to amend when 'the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief.'" <u>In re Engle Cases</u>, 767 F.3d 1082, 1108 (11th Cir. 2014) (quoting <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)). The rule thus serves to facilitate the amendment of a pleading, so long as the defendant does not suffer any prejudice as a result. <u>Stephens</u>, 2013 WL 6148099, at *2 (citing Charles Alan Wright et al., <u>Federal Practice & Procedure</u> § 1480 (3d ed. 2010)) (plaintiff

AO 72A
(Rev. 8/82)

could proceed with her otherwise procedurally improper amended complaint, based on notice to the defendant, tolling of the statute of limitations, and the fact that the court would have granted a timely request for leave to amend).

Here, allowing Plaintiff's Amended Complaint will not prejudice Defendant, as Defendant became aware of Plaintiff's claims when she served the Glynn County Attorney with a copy of the Amended Complaint on October 21, 2015, see dkt. no. 10.[8] Conversely, as discussed with regard to sufficiency of service below, if the Court were to disallow this pleading, the applicable statute of limitations would bar Plaintiff from refiling it in a new action. See infra Part III. Moreover, had Plaintiff moved for the Court's permission to file the Amended Complaint at issue prior to having done so, the Court would have freely granted that request.

Thus, although Plaintiff failed to comply with the formal requirements of Rule 15(a) prior to amending her Complaint, the relevant considerations under that rule militate toward allowing the Amended Complaint as a pleading in this case. As the Amended Complaint supersedes the original Complaint, see Malowney v. Fed. Collection Deposit Grp., 193 F.3d 1342, 1345

---

[8] Notwithstanding Defendant's arguments regarding the validity of service of process on this date, see dkt. no. 11-1, pp. 5-7, Defendant's filing of its Motion to Dismiss and Answer shortly thereafter unequivocally demonstrates that this attempt at service did, in the very least, put Defendant on notice of the claims against it, see dkt. nos. 11-12. See infra Part III.

AO 72A
(Rev. 8/82)

(11th Cir. 1999) (citing Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 601 (5th Cir. 1981)), Defendant's Motion to Dismiss the original Complaint (dkt. no. 18) is **DISMISSED at moot**. To the extent that Defendant's Motion to Dismiss the Amended Complaint (dkt. no. 11) is based on its alleged noncompliance with Rule 15(a), Defendant's arguments in this regard lack merit.

## III. Sufficiency of Service of Process

A plaintiff bears the responsibility of serving the defendant with copies of the complaint and a summons in accordance with Federal Rule of Civil Procedure 4(m) ("Rule 4(m)"). Lepone-Dempsey v. Carroll Cty. Comm'rs., 476 F.3d 1277, 1280-81 (11th Cir. 2007) (citing Fed. R. Civ. P. 4(c)(1)). Rule 4(m) provides, in part, as follows:

> If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).[9] Rule 4(m) thus requires that a plaintiff properly effect service on the defendant within 120 days after

---

[9] A recent amendment to this rule shortened the 120-day period for service to only 90 days; however, this amendment went into effect on December 1, 2015, and thus does not apply here. See Fed. R. Civ. P. 4 advisory committee's note.

AO 72A
(Rev. 8/82)

filing a complaint against it. Lepone-Dempsey, 476 F.3d at 1281 (citing Fed. R. Civ. P. 4(m)).

Where a plaintiff has filed a complaint but has not yet served the same upon the defendant, the plaintiff's decision to amend the complaint does not extend the timeframe in which to effect service under the rule. See Leonard v. Stuart-James Co., 742 F. Supp. 653, 662 (N.D. Ga. 1990). The amended complaint must still be served within 120 days of the filing of the original complaint. See id. at 660, 662 (service of the amended complaint—while within 120 days of its own filing—came 157 days after the original complaint's filing and thus was insufficient); cf. Stephens, 2013 WL 6148099, at *1, 3 n.3 (service of the amended complaint was proper 108 days after the original complaint's filing). In those circumstances, the amended complaint must be served in the same manner as an original complaint, rather than the manner applicable to subsequent pleadings. See Leonard, 742 F. Supp. at 662.

Relevant here is that the Federal Rules of Civil Procedure contemplate two methods for serving a complaint upon a local governmental entity: (a) "delivering a copy of the summons and of the complaint to its chief executive officer," or (b) "serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant." Fed. R. Civ. P. 4(j)(2). Under Georgia law, a county must be

served by delivering these documents "to the chairman of the board of commissioners, president of the council of trustees, mayor or city manager of the city, or to an agent authorized by appointment to receive service of process." O.C.G.A. § 9-11-4(e)(5).

In this case, it is undisputed that Plaintiff did not properly serve Defendant within the 120-day service period under Rule 4(m). See Dkt. No. 11-1, p. 6; Dkt. No. 16, p. 8. Plaintiff served copies of the Amended Complaint and Summons upon the Glynn County Attorney on October 21, 2015, which was 118 days after filing the original Complaint. Dkt. No. 10. As Plaintiff recognizes in her briefing, see dkt. no. 16, p. 8, this attempt at service was ineffective, because the Glynn County Attorney was not an individual authorized to accept service on Defendant's behalf under Georgia law. While Plaintiff's attempt to re-serve Defendant was made by delivery to an appropriate person—Defendant's Chairman—it did not occur until November 18, 2015, which was 146 days after the original Complaint was filed. See Dkt. Nos. 13-15.

Nevertheless, because Rule 4(m) affords two "safety hatches" for complaints served outside the 120-day window, Plaintiff's failure to perfect service within that timeframe is not necessarily fatal to her cause of action. See Lau, 46 F. Supp. 2d at 1380. Rather, Plaintiff may avoid a dismissal of

AO 72A
(Rev. 8/82)

this action by demonstrating good cause for failing to meet the service deadline, in which case the Court would be obligated to extend that deadline for an appropriate period. See Lepone-Dempsey, 476 F.3d at 1281 (citing Fed. R. Civ. P. 4(m)). Alternatively, Plaintiff may avoid dismissal by convincing the Court to exercise its discretion to extend the time for service even in the absence of good cause. See id. (citing Horenkamp v. Van Winkle & Co., 402 F.3d 1129, 1132 (11th Cir. 2005)); Lau, 46 F. Supp. 2d at 1380 (citing Madison v. BP Oil Co., 928 F. Supp. 1132, 1135 (S.D. Ala. 1996)). The Court must first resolve the issue of good cause before turning to discretionary considerations. See, e.g., Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298, 1306 (3d Cir. 1995); Lau, 46 F. Supp. 2d at 1381.

**A. Good Cause**

"Good cause exists 'only when some outside factor[,] such as reliance on faulty advice rather than inadvertence or negligence, prevented service.'" Lepone-Dempsey, 476 F.3d at 1281 (alteration in original) (quoting Prisco v. Frank, 929 F.2d 603, 604 (11th Cir. 1991)). Courts have likened good cause to the concept of "excusable neglect," see Fed. R. Civ. P. 6(b)(1)(B), which requires a showing of good faith and a reasonable basis for noncompliance with the time set forth in the rule. See, e.g., Adams v. AlliedSignal Gen. Aviation Avionics, 74 F.3d 882, 887 (8th Cir. 1996) (citing Lujano v.

AO 72A
(Rev. 8/82)

Omaha Pub. Power Dist., 30 F.3d 1032, 1035 (8th Cir. 1994), and

Pellegrin & Levine, Chartered v. Antoine, 961 F.2d 277, 282-83

(D.C. Cir. 1992)); Lau, 46 F. Supp. 2d at 1380 (citing Madison,

928 F. Supp. at 1137).  While certain factors outside of a

plaintiff's control satisfy this standard, neither inadvertence

of counsel nor unfamiliarity with the governing rules is one of

them.  See, e.g., Petrucelli, 46 F.3d at 1307 (citing Lovelace

v. Acme Mkts., Inc., 820 F.2d 81, 84 (3d Cir. 1987)); Hamilton

v. Endell, 981 F.2d 1062, 1065 (9th Cir. 1992) (citing Wei v.

Hawaii, 763 F.2d 370, 372 (9th Cir. 1985)).  Nor does the

tolling of the statute of limitations excuse noncompliance with

Rule 4(m).  Leonard, 742 F. Supp. at 662 n.8.

Plaintiff fails to demonstrate good cause for her untimely

service on Defendant.  Plaintiff first argues that she made a

good-faith effort to timely serve Defendant through the Glynn

County Attorney, which she "reasonably believed" would satisfy

service of process.  Dkt. No. 16, p. 9.  However, regardless of

Plaintiff's good faith, her service upon the wrong party was

attributable only to her or her counsel's own inadvertence in

neglecting to consult or carefully review the unambiguous

provisions regarding service on a local governmental entity.

Equally unavailing is Plaintiff's second argument, in which

she points to the tolling of the statute of limitations as good

cause not to dismiss this case, see id. (citing Rhodan v.

Schofield, No. CIVA 1:04CV2158 TWT, 2007 WL 1810147, at *5 (N.D. Ga. June 19, 2007)). While the court in Rhodan cited the statute of limitations' functional bar on refiling as both good cause and a basis for exercising its discretion to enlarge the time for service, 2007 WL 1810147, at *5, the cases on which it relied discussed these circumstances only with regard to the discretionary considerations for the court, see Lepone-Dempsey, 476 F.3d at 1282; Horenkamp, 402 F.3d at 1132-33 (quoting Fed. R. Civ. P. 4(m) advisory committee's note to 1993 amendment). Indeed, it is well established that the statute of limitations plays no role in the good-cause inquiry. See Leonard, 742 F. Supp. at 662 n.8 (collecting cases).

Rather, Plaintiff's failure to properly serve Defendant within the 120-day period was the result of her own mistake as to the appropriate method of service. While Plaintiff could have discovered this error and re-served Defendant within this timeframe had she acted sooner after filing the Complaint, her decision to wait until the final hour prevented her from doing so. Plaintiff thus fails to carry her burden of demonstrating that good cause warrants extending the time for service in this case.

**B. Discretionary Considerations**

Rule 4(m) affords a district court discretion to enlarge the 120-day period for service of process even if there is no

AO 72A
(Rev. 8/82)

good cause shown. Horenkamp, 402 F.3d at 1132 (citing Henderson v. United States, 517 U.S. 654 (1996) ("Complaints are not to be dismissed if served within 120 days, or within such additional time as the court may allow.")). Factors that may warrant granting a permissive extension of time for service include, for example, "if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service." Id. at 1132-33 (quoting Fed. R. Civ. P. 4(m) advisory committee's note to 1993 amendment). Other relevant considerations may include whether the defendant had notice of the suit despite the plaintiff's failure to perfect timely service, and whether the defendant has received proper service since the close of the 120-day window. See id. at 1133.

The Court finds that the facts of this case justify an extension of time for service beyond that which is outlined in Rule 4(m). As Plaintiff emphasizes in her briefing, see dkt. no. 16, pp. 10-12, the statute of limitations for filing a Title VII action is ninety days after receiving the "right-to-sue" letter. Abram-Adams v. Citigroup, Inc., 491 F. App'x 972, 975 (11th Cir. 2012) (citing 42 U.S.C. § 2000e-5(f)(1)). Plaintiff received such letter on March 27, 2015, am. compl., ¶ 10, and, therefore, the period in which to file suit on these claims expired on June 25, 2015. A dismissal of the Amended Complaint,

AO 72A
(Rev. 8/82)

even without prejudice, would be tantamount to a dismissal with prejudice under these circumstances, because the statute of limitations would foreclose the refiling of Plaintiff's claims. Also notable is that Defendant became aware of this action during or soon after the 120-day period, as evidenced by its filing of a Motion to Dismiss and Answer within weeks thereof. See Dkt. Nos. 11-12. Furthermore, as discussed supra, Plaintiff properly served Defendant's Chairman with copies of the Amended Complaint and Summons shortly after the 120-day period, on November 18, 2015. Dkt. Nos. 13-15.

Defendant's argument based on this Court's decision in Cummings v. Douberly, No. 2:13-cv-59-LGW-RSB (S.D. Ga. Apr. 7, 2014), does not change this result. See Dkt. No. 18, pp. 15-16. In Cummings, the Court noted that "the running of the statute of limitations does not require that a district court extend the time for service of process," as the court has discretion in making this decision. Order at 3, Cummings, No. 2:13-cv-59-LGW-RSB, ECF No. 14 (quoting Horenkamp, 402 F.3d at 1133). The Court applied this rule to dismiss the plaintiff's action in Cummings, despite the fact that the applicable statute of limitations could bar a refiling of her complaint. Id. at 3-4, 4 n.2. However, Cummings is distinguishable from this case in that the plaintiff there had already obtained one extension of the time for service from the Court and failed to serve the

AO 72A
(Rev. 8/82)

defendant within the extended period.  Id. at 3-4.  Moreover,

Cummings did not involve any showing of a good-faith attempt to

perfect service after the deadline, or any other consideration

that would weigh in favor of extending the deadline to allow the

plaintiff another opportunity to do so.  As the circumstances of

Cummings were much unlike those in this case, the Court finds no

reason to reach a similar outcome here.

Plaintiff thus meets her burden of convincing the Court

that the facts of this case warrant an extension of the time for

service under Rule 4(m).  As the Court finds that service on

November 18, 2015, was appropriate under the circumstances,

Plaintiff's service on Defendant on this date was not untimely.

Defendant's Motion to Dismiss Plaintiff's Amended Complaint on

these grounds is, therefore, **DENIED**.[10]

---

[10]  Defendant's arguments regarding the contents of the Summons issued
at the time of the Amendment Complaint's filing, see dkt. no. 18, pp.
13-14, likewise fail.  Defendant's Motion does not purport to seek
dismissal for insufficient process under Federal Rule of Civil
Procedure 12(b)(4), see dkt. no. 11-1; rather, Defendant introduces
these arguments for the first time in its Reply brief, see dkt. no.
18, pp. 13-14.  As the Summons was served on the Glynn County Attorney
on October 21, 2015, and thus was before Defendant at the time of
filing its Motion on November 12, 2015, see dkt. no. 11, Defendant
waived these arguments by failing to raise them in its initial
briefing in support of its Motion.  See Herring v. Sec'y, Dept. of
Corrs., 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have
admonished, '[a]rguments raised for the first time in a reply brief
are not properly before a reviewing court.'" (alteration in original)
(quoting United States v. Coy, 19 F.3d 629, 632 n.7 (11th Cir.
1994))).  Even if Defendant had properly raised these arguments, they
would not provide grounds for dismissal.  See Drill S., Inc. v. Int'l
Fid. Ins. Co., 234 F.3d 1232, 1238 (11th Cir. 2000) (a summons that is
"technically defective" is not fatal to service of process so long as
it is in "substantial compliance" with the rules and there is no

AO 72A
(Rev. 8/82)

## IV. Plaintiff's Title VII Claims (Counts One and Two)

An action for discrimination in violation of Title VII may not be brought "unless the alleged discrimination has been made the subject of a timely-filed EEOC charge." Alexander v. Fulton Cty., 207 F.3d 1303, 1332 (11th Cir. 2000) (citing 42 U.S.C. § 2000e-5), overruled on other grounds by Manders v. Lee, 338 F.3d 1304, 1328 n.52 (11th Cir. 2003). To be timely, a plaintiff must file a charge with the EEOC within 180 days after the alleged discrimination occurred. 42 U.S.C. § 2000e-5(e)(1). If the plaintiff does not file before this time elapses, her subsequent judicial claim is procedurally barred for failure to exhaust her administrative remedies. See Del. St. Coll. v. Ricks, 449 U.S. 250, 256 (1980).

Additionally, an EEOC charge must set forth, among other things, "[a] clear and concise statement of the facts, including

---

prejudice to the defendant (citing Sanderford v. Prudential Ins. Co. of Am., 902 F.2d 897, 900 (11th Cir. 1990))); Morrel v. Nationwide Mut. Fire Ins. Co., 188 F.3d 218, 224 (4th Cir. 1999) ("[S]ervice of process is not legally defective simply because the complaint misnames the defendant in some insignificant way."); Tremps v. Ascot Oils, Inc., 561 F.2d 41, 44 (7th Cir. 1977) ("A defendant who is clearly identified by a summons and complaint and who has been served with those documents may not avoid the jurisdiction of the district court merely because he is incorrectly named in them. . . . . [It is sufficient if the documents are] not susceptible to any reasonable doubt or confusion about who it was the plaintiff intended to sue." (citing United States v. A. H. Fischer Lumber Co., 162 F.2d 872 (4th Cir. 1947))); Fed. Deposit Ins. Corp. v. Swager, 773 F. Supp. 1244, 1249 (D. Minn. 1991) (technical defects in identifying the defendant's name and address did not justify dismissal where the defendant had received timely notice of the action and suffered no actual prejudice).

pertinent dates, constituting the alleged unlawful employment practices." Alexander, 207 F.3d at 1332 (alteration in original) (quoting 29 C.F.R. § 1601.12(a)(3)). The purpose of this requirement is to give the EEOC the first opportunity to investigate the alleged discriminatory practices so that it may attempt to help resolve the situation if it sees fit. Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1279 (11th Cir. 2004) (citing Evans v. U.S. Pipe & Foundry Co., 696 F.2d 925, 929 (11th Cir. 1983)). A subsequent judicial complaint is "limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Alexander, 207 F.3d at 1332 (quoting Mulhall v. Advance Sec., Inc., 19 F.3d 586, 589 n.8 (11th Cir. 1994)). Allegations in the complaint "may encompass any kind of discrimination like or related to allegations contained in the charge and growing out of such allegation during the pendency of the case before the [EEOC]." Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466 (5th Cir. 1970) (quoting King v. Ga. Power Co., 295 F. Supp. 943, 947 (N.D. Ga. 1968)). The complaint may also "amplify, clarify, or more clearly focus" the allegations in the EEOC complaint, "but allegations of new acts of discrimination are inappropriate." Gregory, 355 F.3d at 1279-80 (citing Wu v. Thomas, 863 F.2d 1543, 1548 (11th Cir. 1989)). Still, courts are "reluctant to allow procedural technicalities to bar

claims," and "the scope of an EEOC complaint should not be strictly interpreted." Id. at 1280 (quoting Sanchez, 431 F.2d at 460-61, 465).

### 1. Hostile Work Environment

Plaintiff has properly exhausted her hostile work environment claim to the extent that it is based on the circumstances surrounding her inability to serve in the Data Analyst position. Under Title VII, a hostile work environment exists where "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' . . . that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Harris v. Forklift Sys., Inc., 510 U.S. 17, 17 (1993) (citation omitted) (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 65, 67 (1986)). A hostile work environment ordinarily constitutes a "continuing action" or "continuing violation." See Penaloza v. Target Corp., No. 8:11-CV-2656-T-33AEP, 2012 WL 6721011, at *6 (M.D. Fla. Dec. 27, 2012), aff'd, 549 F. App'x 844 (11th Cir. 2013); Lane v. Ogden Entm't, Inc., 13 F. Supp. 2d 1261, 1271-72 (M.D. Ala. 1998) ("Application of . . . the continuing violation theory is most appropriately applicable to hostile work environment claims, where the claim at issue is not based on discrete acts, but is based on an ongoing pattern of offensive conduct.").

AO 72A
(Rev. 8/82)

Although Plaintiff's EEOC charge does not explicitly label the Property Appraisal Office as a "hostile work environment" or the allegedly discriminatory acts as a "continuing action," dkt. no. 11, ex. A, its failure to do so is not fatal to Plaintiff's hostile work environment claim. See Gregory, 355 F.3d at 1280 (courts must liberally construe the scope of an EEOC charge (quoting Sanchez, 431 F.2d at 460-61, 465)); Sanchez, 431 F.2d at 462-64 (failure to check the appropriate box is a mere "technical defect or omission"); see, e.g., Jean-Francois v. Anderson, No. CIV.A.5:07-CV-34(CAR), 2008 WL 5272864, at *12 (M.D. Ga. Dec. 18, 2008) (hostile work environment claim not subject to dismissal where the administrative charge did not state that working conditions had been "hostile, abusive, or even unpleasant" and only listed a single date—the date of the plaintiff's discharge—as the relevant date of discrimination).

Rather, Plaintiff's charge alleges facts from which a reasonable EEOC investigator would infer that the charge raises a hostile work environment claim. The EEOC charge states that Plaintiff "believe[d] [she] ha[d] been discriminated against because of [her] race" and indicates that she formed this belief based on certain actions of her employer occurring during three different time periods. See Dkt. No. 11, Ex. A. Most straightforward is the allegation that Plaintiff stepped down from the Data Analyst position on October 27, 2009, which, when

AO 72A
(Rev. 8/82)

read in context, is intended to suggest that Defendant

constructively forced her out of this position on this date.

See id. The charge goes on to explain that this incident

occurred "after" the following events took place: (1) "the

persons who were assigned to help the previous Caucasian

[employee] in the position were reassigned to other positions in

the office"; (2) Plaintiff was left "to do all the work" while

still expected to fulfill "the duties of [her] previous job";

and (3) Plaintiff was "required to give up [her] office

location" to a less-senior employee, despite office assignments

ordinarily being based on seniority. Id. (emphasis added).

Additionally, the charge states that "[a]fter [Plaintiff]

stepped down from [the] position[,] the Caucasian who was given

the position was also given help for the position." Id.

(emphasis added). It further indicates that at some

unidentified point in time, "Gerhardt[] told [Plaintiff] the

people [who were reassigned during her tenure as Data Analyst]

were needed to be put into the field to collect data," but gave

"[n]o reason . . . as to why [Plaintiff] had to give up [her]

office." Id.

   Plaintiff's EEOC charge thus describes the circumstances

leading up to, at the time of, and after her resignation from

the Data Analyst position, which collectively caused her to

believe that Defendant had acted with discriminatory animus

against her.  In this way, this case is distinguishable from those cited by Defendant, see dkt. no. 11-1, pp. 10-12, in which the administrative charge complained of a single action taken by the employer-defendant on a certain date and for what appeared to be a discriminatory reason.  See, e.g., Green v. Elixir Indus., Inc., 152 F. App'x 838, 841 (11th Cir. 2005) (alleging that the defendant had terminated the plaintiff's employment on a single date for attendance policy violations, even though nonminority employees having violated those policies were retained); Perrymond v. Lockheed Martin Corp., No. 1:09-CV-1936-TWT, 2010 WL 987218, at *8 (N.D. Ga. Feb. 3, 2010) report and recommendation adopted in part, rejected in part, 2010 WL 925178 (N.D. Ga. Mar. 9, 2010) ("Plaintiff does not mention experiencing a series of discriminatory acts because of her race, and she does not indicate that the discriminatory events constituted a continuing action.  Instead, she refers to her termination, [and thus] to retaliation.").  As Plaintiff's EEOC charge in this case alleges that Defendant engaged in a series of discriminatory acts over a period of time, and that such conduct was sufficiently severe as to prevent Plaintiff from remaining in the Data Analyst position, the charge sets forth facts that reasonably encompass a claim of a hostile work environment.  See Harris, 510 U.S. at 22 ("A discriminatorily abusive work environment . . . can and often will detract from

AO 72A
(Rev. 8/82)

employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers.").

However, insofar as Plaintiff's Complaint alleges facts relating to the black-faced Santa Claus and "Ms. Thang" incidents, those events were not part of the continuing violation set forth in the EEOC charge and thus were not timely pursued. Title VII requires that a plaintiff file a charge of discrimination with the EEOC within 180 days of the allegedly discriminatory act, but recognizes an exception where the act is a continuing violation. See Calloway v. Partners Nat'l Health Plans, 986 F.2d 446, 448 (11th Cir. 1993). Pursuant to the continuing violation doctrine,

> [w]here an employee charges an employer with
> continuously maintaining an illegal employment
> practice, [s]he may file a valid charge of
> discrimination based upon that illegal practice until
> 180 days after the last occurrence of an instance of
> that practice. However, where the employer engaged in
> a discrete act of discrimination more than 180 days
> prior to the filing of a charge with the EEOC by the
> employee, allegations that the discriminatory act
> continues to adversely affect the employee or that the
> employer presently refuses to rectify its past
> violation will not satisfy the requirement of 42
> U.S.C. § 2000e-5(e) that the plaintiff file his charge
> of discrimination within 180 days of the
> discriminatory act.

AO 72A
(Rev. 8/82)

Beavers v. Am. Cast Iron Pipe Co., 975 F.2d 792, 796 (11th Cir. 1992) (quoting Gonzalez v. Firestone Tire & Rubber Co., 610 F.2d 241, 249 (5th Cir. 1980)).[11]

Here, Plaintiff alleges in the Amended Complaint that three coworkers gave her the black-faced figurine in April 2009, and that she reported and filed a grievance regarding this event and Gerhardt's "Ms. Thang" comment in May and June 2009. Am. Compl., ¶¶ 14-15, 21, 23-28. As Plaintiff filed her EEOC charge on April 9, 2010, id. at ¶ 7—roughly one year after these events allegedly occurred—Plaintiff did not timely pursue her administrative remedies with regard to these claims. Nor did these alleged occurrences constitute part of the same continuing violation as Defendant's actions in allegedly forcing Plaintiff

---

[11] The Court of Appeals for the Fifth Circuit has established certain factors to guide the inquiry into whether an employer's conduct constitutes a continuing action. See Berry v. Bd. of Supervisors of L.S.U., 715 F.2d 971, 981 (5th Cir. 1983). While the Berry decision is not binding on this Court, its discussion of the relevant factors is nevertheless instructive here:

> The first [factor] is subject matter. Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation? The second is frequency. Are the alleged acts recurring (e.g., a biweekly paycheck) or more in the nature of an isolated work assignment or employment decision? The third factor, perhaps of most importance, is degree of permanence. Does the act have the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate?

Id.; see also Malone v. K-Mart Corp., 51 F. Supp. 2d 1287, 1300-01 (M.D. Ala. 1999) (applying the Berry rubric).

AO 72A
(Rev. 8/82)

out of the Data Analyst position in October 2009. Rather, the allegedly offensive gestures and comments of Plaintiff's coworkers and supervisors were discrete acts: distinct in manner and motivation from any attempt to thwart her job performance, occurring months before those alleged attempts took place, and sufficient to trigger her duty to assert her rights not only through internal channels but also through an administrative filing. Consequently, Plaintiff needed to file a discrimination charge based on these allegations within 180 days of their occurrence, and her failure to do so bars her from bringing a hostile work environment claim on these grounds at this time.

### 2. Retaliation

Plaintiff exhausted her administrative remedies with regard to her retaliation claim. Title VII makes it unlawful for an employer to retaliate against an employee "because [s]he has opposed any practice made an unlawful employment practice by [Title VII]." Little v. United Techs., Carrier Transicold Div., 103 F.3d 956, 956 (11th Cir. 1997) (quoting 42 U.S.C. § 2000e-3(a)). Retaliation thus involves a showing that (1) the plaintiff engaged in statutorily protected activity; (2) she suffered a materially adverse action; and (3) there was a causal link between these two events. Butler v. Ala. Dep't of Transp., 536 F.3d 1209, 1212-13 (11th Cir. 2008).

As with her hostile work environment claim, Plaintiff's
failure to use the word "retaliation" and to mark the box
labeled as such in her EEOC charge, see dkt. no. 11, ex. A, is
not determinative of the exhaustion inquiry.  See Gregory, 355
F.3d at 1280 (quoting Sanchez, 431 F.2d at 460-61, 465);
Sanchez, 431 F.2d at 462-64.  The charge sets forth several
allegedly discriminatory actions taken by Defendant around the
time that Plaintiff stepped down from the Data Analyst position
in October 2009.  See Dkt. No. 11, Ex. A.  While perhaps
Plaintiff believed race discrimination to be the sole cause for
these actions when she filed her EEOC charge, Defendant could
have taken these actions for many reasons—discriminatory animus,
retaliation for earlier events, or legitimate business concerns—
and it is reasonable to assume that an EEOC investigation into
the alleged actions would have looked into these possibilities.
See Gregory, 355 F.3d at 1280 ("[I]t could be that race and sex
were the only reasons, as [the plaintiff] initially believed,
why she was terminated.  It could also be, however, that [she]
was terminated in retaliation for having complained about [a
supervisor's] disparate treatment of her.")  An EEOC
investigation into Defendant's motivations—and, more
specifically, Gerhardt's motivations, as he is the only
individual named in the charge as having been involved in the
alleged wrongdoing, see dkt. no. 11, ex. A—would have revealed

Plaintiff's report and grievance alleging discrimination on the part of Gerhardt in the preceding months and thus would have uncovered any evidence of retaliation, see am. compl., ¶¶ 21, 27. See Gregory, 355 F.3d at 1280 (plaintiff properly exhausted retaliation claim where the administrative charge alleged only race discrimination, because the EEOC investigation would have revealed that the employee had complained about discriminatory conduct prior to her termination).

As Plaintiff's retaliation claim is "inextricably intertwined" with her allegations of discrimination, the EEOC charge encompassed a retaliation claim. See id. Moreover, according to Plaintiff's Complaint, the EEOC issued a determination finding probable cause that Defendant had retaliated against Plaintiff—an allegation that, if true, conclusively demonstrates that the EEOC had an adequate opportunity to look into the matter prior to Plaintiff coming to Court. Because Plaintiff has properly exhausted her administrative remedies with respect to her retaliation claim, as well as her hostile work environment claim based on her experience in the Data Analyst position, Defendant's Motion to Dismiss these claims is **DENIED**. The Court notes, however, that because Plaintiff did not pursue her administrative remedies with regard to the black-faced Santa Claus and "Ms. Thang"

AO 72A
(Rev. 8/82)

incidents, Plaintiff cannot sustain a hostile work environment claim on those grounds.[12]

## V. Plaintiff's Section 1981 Claims (Counts Three and Four)

As Plaintiff consents to the dismissal of her Section 1981 claims, see dkt. no. 16, p. 2, Defendant's Motion to Dismiss is **GRANTED** as to these counts.

### CONCLUSION

Based on the foregoing, Defendant's Motion to Dismiss Plaintiff's original Complaint (dkt. no. 18) is **DISMISSED as moot.** Defendant's Motion to Dismiss the Amended Complaint (dkt. no. 11) is **GRANTED in part** and **DENIED in part** as follows: it is **GRANTED** as to its request for a dismissal of Plaintiff's Section 1981 claims in counts three and four; it is **DENIED** as to its request to dismiss all claims for insufficient service of process; and it is **DENIED** as to its request for a dismissal of Plaintiff's Title VII claims in counts one and two for failure

---

[12] In its consolidated Motion to Dismiss the original Complaint and Reply to the Motion to Dismiss the Amended Complaint, Defendant also challenges the legal sufficiency of Plaintiff's retaliation claims under the Twombly/Iqbal pleading standard. Dkt. No. 18, pp. 16-18. Because Defendant did not raise this issue in its Motion to Dismiss the Amended Complaint, see dkt. no. 11-1, it cannot do so for the first time in its Reply brief. See Herring, 397 F.3d at 1342 ("[A]rguments raised for the first time in a reply brief are not properly before a reviewing court." (alteration in original) (quoting Coy, 19 F.3d at 632 n.7)). The Court thus declines to consider these arguments at this time. See Perrymond, 2010 WL 987218, at *10 (concluding that it would be "inappropriate" to address the defendant's Twombly/Iqbal arguments where its initial brief in support of its motion raised only the issue of exhaustion, and these arguments appeared for the first time in its reply brief).

AO 72A
(Rev. 8/82)

to state a claim.  Accordingly, Plaintiff's Section 1981 claims against Defendant are hereby **DISMISSED**, but her Title VII claims remain viable at this time.

**SO ORDERED**, this 11TH day of August, 2016.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)